UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARVIN ORLANDO MOLINERO-GUTIERREZ,<br><br>Defendant. | No. 2:14-cr-00179-MCE<br><br>**MEMORANDUM AND ORDER** |

Defendant Marvin Orlando Molinero-Gutierrez ("Defendant") was indicted on July 3, 2014, for being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He now moves to dismiss that indictment on the basis that issuance of his original deportation order violated his due process rights. ECF No. 29. Alternatively, he moves to dismiss the charge under 1326(b)(2) because he claims his underlying conviction was not an aggravated felony. ECF No. 29. The Government opposed Defendant's Motion, and Defendant filed a Reply. ECF Nos. 33-34. The Court entertained oral argument on March 31, 2016, and took the matter under submission. Having considered the record in its entirety and the arguments of counsel before the Court, that Motion is now DENIED.

///

///

# BACKGROUND[1]

Defendant was born in and is a citizen of Honduras. In the early 1990's, he became a legal permanent resident here as a beneficiary under his father's asylum petition.

On April 6, 2016, Defendant was arrested and charged in Solano County Superior Court with Possession for Sale of Cocaine Base in violation of California Health and Safety Code § 11351.5. According to the stipulated factual basis supporting his eventual conviction, Defendant had possessed seven rocks of cocaine base weighing a total of .65 grams. Pursuant to the parties' plea negotiations, however, the original charge was dismissed and Defendant pled guilty instead to a second count, charging a violation of Health and Safety Code § 11352. The judge made clear on the record that he was adding "a Count 2, violation of transportation for sale." The prosecutor concurred and Defendant also indicated that was correct. A "Count II" was handwritten onto the felony complaint as "H&S 11352," which was defined on that document as "Transportation for Sale Cocaine." Defendant thereafter pled nolo contendere to Count 2, which is recorded in the minutes from his plea colloquy as a violation of "11352 HS."

Defendant was sentenced to 3 years of probation and 120 days in jail, which was suspended until his probation was revoked, and he was then sentenced to three years imprisonment. He was paroled after one year, and, in April 2009, Immigration and Customs Enforcement ("ICE") officers arrested him and initiated removal proceedings.

During the course of his immigration proceedings, Defendant was housed at the ICE detention center in El Centro, California, a location approximately two hours from San Diego, the closest major city. There was no system in place at the time for the appointment of counsel, and Defendant's family was financially unable to retain counsel on his behalf. In addition, Defendant has offered evidence that only a small percentage

---

[1] The material facts relevant to Defendant's Motion are not in dispute and have been taken from the parties' papers and the attachments thereto.

of immigrants facing removal during the relevant time period were able to obtain the assistance of pro bono counsel. In any event, Defendant proceeded pro se.

Defendant's Notice to Appear charged him as removable pursuant to § 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), based on his section 11352 conviction.[2] That document further provided that Defendant could choose to be represented by counsel at no cost to the Government and that unless he requested otherwise, no hearing would be scheduled for at least ten days to provide time to secure counsel. In addition, a list of potentially available pro bono counsel was provided. Defendant instead exercised his right to waive the 10-day period prior to appearing before an immigration court and requested an immediate hearing to expedite his case.

Defendant's deportation proceedings took place over the course of several hearings, which were held on April 29, 2009, May 20, 2009, and September 15, 2009.[3] At the April 29 hearing, the Immigration Judge ("IJ") inquired of Defendant as to whether he had been able to hire an attorney. Defendant had not and informed the Court that he did not need additional time to try to make such arrangements. The IJ followed up by specifically asking if Defendant wanted to give up his right to representation and to proceed pro se, to which Defendant replied in the affirmative.

The IJ then advised Defendant that although his section 11352 conviction was clearly a violation of the controlled substance laws of the United States, it remained to be seen whether it was also an aggravated felony that would bar him from consideration for voluntary departure or various other forms of relief. Defendant was then informed that he could nonetheless apply for cancellation of removal, and the IJ waived the application fee. Defendant also requested to be released on bond, which was not possible given his

---

[2] Section 237(a)(2)(B)(i) provides: "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

[3] It also appears there may have been a master calendar hearing on April 9, 2009, but there is no record from a proceeding on that date.

1  2006 drug conviction.[4]  Finally, the IJ sustained one charge of removability.

2  At a subsequent hearing, held on May 20, 2009, Defendant submitted his application for cancellation of removal.  The Government thereafter stated that Defendant's section 11352 conviction was "quite possibly an aggravated felony" and asked the IJ to instruct Defendant to obtain and present his conviction records to show otherwise.  Defendant explained that he had the minute order, abstract of judgment and charging document, but they did not contain sufficient information to clarify whether or not his conviction qualified as an aggravated felony.  The IJ then asked whether Defendant had the plea waiver form and the plea transcript, which Defendant thought he did.  Because Defendant had pled to a handwritten count, the IJ emphasized that it would be necessary to obtain a transcript of the plea colloquy.  The IJ then confirmed that Defendant understood he could still hire an attorney.  Defendant acknowledged he did, and the IJ set a further hearing date for September 15, 2009.

At that final hearing, the IJ reiterated that the charge of removability had been sustained.  He then addressed cancellation of removal, explaining that Defendant bore the burden of establishing eligibility, which meant he had to show that: (1) he had been a permanent resident for at least five years; (2) he had at least seven years of continuous residence in the United States after lawful admission; and (3) he had not been convicted of an aggravated felony.  The Government conceded Defendant met the first two requirements, so the relevant inquiry was whether Defendant could show by a preponderance of the evidence that he did not have any aggravated felony convictions.

The Government took the position that Defendant's section 11352 conviction was "clearly a drug trafficking aggravated felony" since both the abstract of judgment and the complaint made clear there was a commercial aspect of sale.  The IJ explained to Defendant that the statute under which he was convicted was not categorically an aggravated felony because it was too broad in comparison to federal law.  However,

---

[4] The IJ nonetheless advised Defendant that he was entitled to a bond hearing and could appeal the decision should he choose to do so.

4

applying the modified categorical approach, the IJ went on to conclude from the relevant documents that Defendant's actual conviction could very well have been an aggravated felony and that Defendant had therefore not met his burden in showing otherwise.  The IJ emphasized that Defendant was not finding for removal purposes that the section 11352 conviction was an aggravated felony.  Rather, he was simply finding that Defendant failed to meet his burden to show it was not.  As such, the IJ denied Defendant's application for cancellation.

The IJ then moved on to whether Defendant might qualify for any other relief. Defendant indicated that he feared returning to Honduras based on the persecution his father previously suffered, and the IJ explained that various other forms of relief might be available to him.  Specifically, the IJ advised Defendant he could apply for asylum, withholding of removal, and relief under Article III of the Convention Against Torture. The IJ also explained, however, that Defendant would not be eligible for asylum if he had an aggravated felony conviction and it would remain his burden to show he did not.  In addition, Defendant was advised he would not be eligible for withholding of removal or protection under the Convention Against Torture if convicted of a "particularly serious crime," which would generally be the case if he had an aggravated felony trafficking conviction on his record.  Again, while Defendant could put on evidence to rebut that conclusion, he would bear the burden of doing so.  Finally, the IJ advised Defendant that he could apply for deferral of removal under the Convention Against Torture, but the Government would remain free to deport him to any country in the world that would accept him.

The IJ proceeded to ask Defendant whether he would like to apply for asylum, withholding of removal or protection under the Convention Against Torture.  Defendant declined, after which the IJ indicated there were no other available avenues for relief because even qualifying for voluntary departure would require Defendant to show he had no aggravated felony conviction.  The IJ then informed Defendant of his right to appeal, which he waived.

5

Defendant was deported to Honduras, but returned and was arrested in Fairfield, California, for Possession of a Controlled Substance and Transportation/Etc. of Controlled Substance in violation of California Health and Safety Code sections 11377(A) and 11379(A).  His Order of Removal was consequently reinstated and he was removed from the United States.  He thereafter attempted to return again and was federally prosecuted in Arizona where he pled guilty to illegal entry under 8 U.S.C. § 1325.  After this removal, Defendant returned and successfully entered the United States where he committed additional crimes (i.e., Possession of a Controlled Substance While Armed, Possession of a Controlled Substance, Carrying a Loaded Handgun, being a Felon/Addict in Possession of a Firearm, and Driving with a Suspended License), which again brought him to the attention of ICE and resulted in the instant charges.

## STANDARD

A defendant may collaterally attack a removal order serving as a predicate element of his illegal re-entry offense under § 1326 pursuant to the Due Process Clause. United States v. Valdavinos-Torres, 704 F.3d 679, 686 (9th Cir. 2012).  "To succeed in such a challenge, however, [the defendant] must demonstrate: (1) he exhausted any administrative remedies that may have been available to seek relief; (2) the deportation proceedings from which the order issued improperly denied him the opportunity for judicial review; and (3) the order was fundamentally unfair." Id.  "An underlying removal order is 'fundamentally unfair' if a defendant's due process rights were violated by defects in his deportation process, and he suffered prejudice as a result." Id.  To establish prejudice, a defendant must "show that there were plausible grounds on which he could have been granted relief from removal." Id. at 690 (internal citations and quotation marks omitted).  "A plausible claim to relief, however, requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." United States v. Reyes-

Bonilla, 671 F.3d 0136, 1049-50 (9th Cir. 2012).

"[A]n alien is barred from collaterally attacking his removal order as a defense to a Section 1326 charge if he validly waived the right to appeal that order during the deportation proceedings." Valdavinos-Torres, 704 F.3d at 685 (internal citations and quotations omitted).  "This exhaustion requirement, however, cannot bar collateral review if [the defendant's] waiver of his right to appeal did not comport with due process—that is, his waiver was not "considered and intelligent." Id. (internal citations and quotations omitted).  "[T]he IJ's failure to inform an alien of his right to appeal, or his eligibility for relief, can form the basis of an invalid waiver of the right to appeal." United States v. Gonzalez-Villalobos, 724 F.3d 1125, 1131 (9th Cir. 2013).

## ANALYSIS

### A.  Defendant has not shown that his removal order was fundamentally unfair such that dismissal of the indictment is warranted.

Defendant moves to dismiss his current indictment by collaterally attacking his removal order as fundamentally unfair for three reasons: (1) the IJ "precluded [Defendant] from obtaining cancellation of removal and other relief based on a drug conviction that did not actually disqualify him from such relief"; (2) "the IJ failed to adequately advise him of his eligibility for withholding of removal"; (3) "[Defendant] was unrepresented and detained at a remote detention center, which prevented him from being able to fairly defend this complex immigration case." Def.'s Mot. at 1.  None of these arguments are sufficient to justify Defendant's suggested relief.[5]

#### 1.  The IJ did not err in determining Defendant was ineligible for cancellation of removal or other relief that was unavailable to aggravated felons.

Under the INA, aliens convicted of aggravated felonies are precluded from

---

[5] Defendant admittedly did not exhaust his administrative remedies or seek judicial review, but argues instead that because of the fundamental unfairness of Defendant's removal proceedings, he has also satisfied those prongs of § 1326(d).  His current motion thus rises and falls with the fairness inquiry.

obtaining cancellation of removal, voluntary departure and asylum. See 8 U.S.C. §§ 1229b(a)(3), 1229c(a)(1), 1158(b)(2)(B)(i). "Drug trafficking crimes," or those "felon[ies] punishable under the Controlled Substances Act [CSA] (21 U.S.C. 801 et seq.)," qualify as aggravated felonies. See Lopez v. Gonzales, 549 U.S. 47, 55 (2006). "Unless a state offense is punishable as a federal felony it does not count." Id. Accordingly, "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." Id. It follows that a section 11352 conviction is an aggravated felony only if it is no broader than the CSA.

"[T]o determine whether a state conviction qualifies . . . under the federal aggravated felony statute . . . [courts] use the approach set forth in Taylor v. United States, 495 U.S. 575 (1990)." Rendon v. Holder, 764 F.3d 1077, 1082 (2014). "That approach—deemed the 'categorical approach'—requires that courts look only to the statutory definitions—i.e., the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions when making a comparison between a prior conviction and a federal, generic crime." Id. at 1082-83 (internal quotation marks and citations omitted). "If the state statute under which the defendant was previously convicted has the same elements as, or is narrower than, the federal, generic crime, the prior conviction can serve as an aggravated felony predicate." Id. at 1083. "However, if the state 'statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an [aggravated felony] predicate, even if the defendant actually committed the offense in its generic form." Id. (internal quotation marks and citation omitted).

"For the limited purpose of helping to implement the categorical approach, the Court has recognized a narrow range of cases in which courts may apply the modified categorical approach." Id. (internal citations and quotation marks omitted). "The modified categorical approach allows courts to look beyond the statutory text to a limited set of documents to determine the elements of the state offense of which the defendant was convicted when some alternative elements of the state crime would match the

federal, generic crime, and other alternative elements would not." Id.  In Descamps v. United States, ___ U.S. ____, 133 S. Ct. 2276 (2013), the Supreme Court "explained that courts may use the modified categorical approach only when a statute is divisible—i.e., 'lists multiple, alternative elements, and so effectively creates several different . . . crimes.'" Id.  "The Court contrasted divisible statutes with those that are indivisible—i.e., contain a 'single, indivisible set of elements' constituting a single crime—for which the modified categorical approach is inappropriate." Id.  "Thus, after Descamps [courts] may apply the modified categorical approach only when the state statute at issue is divisible." Id.  "If the state statute at issue is overbroad and indivisible, [courts] may not apply the modified categorical approach, and . . . must hold that [an alien] has met his burden for establishing that he was not convicted of an aggravated felony." Id.  Defendant contends that is the case here.

Before 2013, however, the test for determining whether a state conviction constituted an aggravated felony was slightly different.  Previously, when a state statute was not a categorical match to federal law, that is "[w]hen a statute reach[ed] both conduct that would constitute [an aggravated felony] and conduct that would not . . . [,] [courts] interpreted Taylor's edict to include examination of documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes[,] such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." United States v. Rivera-Sanchez, 247 F.3d 905, 908 (9th Cir. 2001) (citations and quotations omitted).  Accordingly, pre-Descamps, if a state statute was not categorically an aggravated felony, courts would proceed to apply the modified categorical approach without conducting a divisibility inquiry.  Id. at 909 (analyzing a materially identical California statute and holding that "[g]iven that [defendant's] conviction does not qualify facially as a predicate offenses, the next step in the Taylor analysis is to determine whether other judicially noticeable facts exist in the record that would prove such qualification").

This distinction is critical here because while the parties agree that section 11352 is not categorically an aggravated felony, see Desire v. Gonzales, 245 Fed. Appx. 627, *629 (9th Cir. 2007), Defendant contends that the actus reus of the state law is indivisible, thus ending the analysis in his favor without resort to the modified categorical analysis. See Rendon, 764 F.3d at 1083. The Government disagrees with this latter position and argues that the IJ properly applied the Taylor analysis, as it was then formulated, without conducting a divisibility analysis. Because "an IJ need not anticipate future 'change[s] in law' when determining an alien's 'apparent eligibility' for relief from removal," the Government has the better argument. See United States v. Vidal-Mendoza, 705 F.3d 1012, 1013 (9th Cir. 2013) (quoting United States v. Lopez-Velasquez, 629 F.3d 894, (9th Cir. 2010) (en banc)) (determining that an "underlying removal proceeding was consistent with due process because [an alien] was correctly informed that he was ineligible for discretionary relief from removal under the applicable law at the time of his removal hearing").

At the time of Defendant's conviction, section 11352 provided as follows:

> (a) Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment in the state prison for three, four, or five years.
>
> (b) Notwithstanding the penalty provisions of subdivision (a), any person who transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment in the state prison for three, six, or nine years.

Cal. Health and Safety Code § 11352 (emphasis added). Case law made it clear in

2009 that if a "conviction [did] not qualify facially as a predicate offense, the next step in the Taylor analysis [was] to determine whether other judicially noticeable facts exist in the record that would prove such qualification." Rivera-Sanchez, 247 F.3d at 909. Accordingly, under the law as it stood in 2009, the IJ properly applied the modified categorical approach without analyzing divisibility.[6]

Defendant next contends, however, that even if the statute is divisible, and application of the modified categorical approach warranted, the IJ erred in determining he was convicted of a crime encompassed by the CSA. According to Defendant, unless the permissible documents show that he pled to section 11352(b), which penalizes the transportation for sale of a controlled substance between noncontinguous counties, he cannot be deemed convicted of an aggravated felony because transportation under subsection (a) could have been for personal, as opposed to commercial, use. The fact that the modified categorical approach as it was understood in 2009 permitted inquiry into whether transportation, even under subsection (a), was for sale or personal purposes, however, runs counter to that argument.

---

[6] Regardless, even under post-Descamps precedent, it appears this Court would be required to find section 11352 divisible. According to Defendant, the actus reus component of section 11352 is indivisible because "[a] jury need not agree on a particular actus reus – whether the defendant 'transports, imports into this state, sells, furnishes, administers, or gives away," or offers or attempts the same – as long as each juror finds the defendant committed one of the acts. Def.'s Mot. at 14 (quoting Cal. Health and Safety Code § 11352). Defendant bases his argument on an unpublished state court opinion where the California Court of Appeal determined that the a jury need not unanimously determine how a defendant violated section 11352(a), so long as its members unanimously agreed that subsection was violated by any of the means set forth therein. People v. Lynch, 2006 WL 2988461, *2 (Cal. Ct. App. 2006). Based on case, Defendant thus contends that the actus reus of section 11352 is comprised of alternate means by which a single crime may be committed as opposed to alternate elements that would comprise different crimes. See Rendon, 764 F.3d at 1085 ("Any statutory phrase that – explicitly or implicitly – refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used.").

The logic of this argument, especially in light of Rendon and its subsequent case law, is appealing. The problem, however, is that post-Rendon the Ninth Circuit has since held that section 11352 is divisible as to its controlled substance element. See United States v. Huitron-Rocha, 771 F.3d 1183, 184 (9th Cir. 2014). That court could not have reached that result unless the actus reus was divisible as well. This is because unless the actus reus was divisible, there was no reason for the court to even broach the divisibility question as to the controlled substance. Accordingly, since the Ninth Circuit implicitly held that the actus reus is divisible, this Court cannot reach a contrary conclusion without holding that those prior decisions are incorrect. This Court lacks the power to make that determination.

This is demonstrated by the Ninth Circuit's analysis is United States v. Almanzan-Becerra, 482 F.3d 1085, 1089 (9th Cir. 2007). In that case, the court considered a district court's sentencing determination that a conviction for transporting methamphetamine under California Health and Safety Code § 11379, a statute materially identical to section 11352 for instant purposes, would have qualified the defendant for a 12-level enhancement under the sentencing guidelines. Id. at 1087-88. The district court had relied on an unspecified report that was insufficient to sustain such an increase, and the Ninth Circuit remanded for resentencing "if the record 'unequivocally establish[ed]' that [the defendant] was convicted of either transporting methamphetamine with the intent to sell or another offense covered by the section." Id. at 1089 (emphasis added). To reach this conclusion, it reasoned:

> We have identified transportation of a controlled substance for personal use as outside the scope of the drug trafficking enhancements. See Navidad-Marcos, 367 F.3d at 908; Rivera-Sanchez, 247 F.3d at 908-09. A conviction for transportation of a controlled substance with the intent to sell, however, certainly qualifies for a section 2L1.2(b)(1)(B) enhancement. Cf. United States v. Benitez-Perez, 367 F.3d 1200, 1204 (9th Cir.2004) (holding that plain language of section 2L1.2 "includes as a qualifying offense possession with intent to distribute or dispense"); United States v. Rodriguez-Lara, 421 F.3d 932, 949 (9th Cir.2005) (affirming enhancement under section 2L1.2(b)(1)(A) based on conviction for the transport of methamphetamine).

Id. If no inquiry into intent was appropriate with respect to that Defendant's transportation conviction, no remand would have been necessary. It follows that it was also proper for the IJ in this case to look at whether Defendant's 2006 transportation conviction was for sale or for personal use.[7] Since the judicially noticeable documents in the record indicate that Defendant was convicted of Transportation for Sale of Cocaine,

---

[7] This conclusion is also consistent with the Ninth Circuit's subsequent decision in Huitron-Rocha, 771 F.3d 1183. In that case, the district court applied the modified categorical approach to a defendant's conviction for possession and transportation of cocaine for sale under section 11352 to determine it was a drug trafficking offense. Id. As indicated above, the Ninth Circuit held that the state law was divisible as to the controlled substance element, a decision that would merely have been advisory unless it was proper for the district court to have applied the modified categorical approach to further inquire as to whether the possession or transportation was for sale or personal use. Stated another way, unless the latter inquiry was permitted, there was no reason to examine the controlled substance itself. This Court cannot hold to the contrary without undermining that authority.

the IJ properly determined that Defendant failed to meet his burden of showing that he had not been convicted of an aggravated felony. Matter of Almanza-Arenas, 24 I. & N. Dec. 771, 774 (BIA 2009) (respondent bore the burden of proof regarding his eligibility for discretionary relief). Accordingly, Defendant's "underlying removal proceeding was consistent with due process because he was correctly informed that he was ineligible for discretionary relief from removal under the applicable law at the time of his removal hearing." Vidal-Mendoza, 705 F.3d at 1013. Defendant's Motion to Dismiss the indictment on this basis is DENIED.

### 2. Defendant has not shown any fundamental unfairness with respect to the IJ's advisement regarding withholding of removal.

Defendant next argues that the IJ insufficiently advised him with regard to his eligibility for withholding of removal because he made an application for such eligibility appear futile and because he failed to advise Defendant how to overcome the presumption that he had been convicted of a "particularly serious crime." "The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be made aware that he has a right to seek relief so that he has a meaningful opportunity to appeal the fact that he was not advised of that right." United States v. Melendez-Castro, 671 F.3d 950, 954 (9th Cir. 2012) (internal citations and quotation marks omitted). "This includes providing an alien with the opportunity to apply for relief." Id. No due process violation occurred here because the IJ advised Defendant that he could apply for withholding of removal and Defendant failed to show he was prejudiced by any purported error to the contrary.

Withholding of removal is permitted under Section 241(b)(3)(A) of the INA if an alien establishes that his "life or freedom would be threatened . . . because of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). "This restriction does not apply, however, if 'the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States.'" In reY-L-,

13

23 I. & N. Dec. 270, 272 (BIA Mar. 5, 2002) (internal citations and quotation marks omitted) (quoting 8 U.S.C. § 1231(b)(3)(B)(ii).

"[A]ggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' within the meaning of section 241(b)(3)(B)(ii)." Id. at 274. "Only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible." Id. To qualify under that rigorous standard, a drug trafficking crime would need to involve "unusual circumstances" that "would need to include, at a minimum: (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles." Id. at 276-77.

In this case, the IJ advised Defendant that he could apply for withholding of removal, and he explained the legal framework that would govern such an application. Nothing in the record gives the impression the IJ was attempting to, or in fact did, discourage Defendant from applying.

Moreover, Defendant has failed to meet his burden in demonstrating prejudice where the record indicates he had a felony drug trafficking conviction and where he, as the only participant in that crime, was unable to show, at the very least, a "merely peripheral involvement . . . in the criminal activity." Indeed, he appears to have been the only identified participant in his criminal enterprise. As such, he would have been unable to show the unusual circumstances necessary to avoid a finding that his conviction was for a particularly serious crime, rendering him ineligible for withholding. Nor has he shown that the past persecution of his father and his vague references to fear in returning to Honduras were sufficient to have plausibly established a claim for

14

withholding.  The Motion to Dismiss is DENIED on this basis as well.

> **3.    Defendant has not shown that his purported lack of access to counsel rendered his removal proceedings fundamentally unfair.**

Finally, Defendant moves to dismiss the indictment because "[a]s an indigent immigration detainee held without counsel at a remote detention center, [he] had no ability to fairly defend against the charges."  Def.'s Mot. at 22.  According to Defendant, his lack of counsel rendered his proceedings fundamentally unfair.  Id.  The instant argument fails because Defendant had no Sixth Amendment right to counsel, Valdavinos-Torres, 704 F.3d at 689, nothing in the record shows he even attempted to retain counsel, and he has failed to demonstrate how the proceedings plausibly would have ended favorably for him had he had been represented.    Moreover, if this Court held that the appointment of counsel was required to avoid violation of this Defendant's due process rights, the same would follow in an untold number of other cases originating out of any remote detention facility and would essentially equate to a holding that due process by default requires the appointment of counsel in removal proceedings.   Such a result cannot be countenanced.   Accordingly, the Motion to Dismiss based on a lack of access to counsel is also DENIED.

> **B.    Defendant's challenge to the § 1326(b)(2) charge is procedurally improper.**

"In the alternative, [Defendant] seeks dismissal of the 8 U.S.C. § 1326(b)(2) charge" because he contends his underlying drug conviction is not an aggravated felony.  Id.  This argument is rejected as premature because subsection 1326(b)(2) "is a penalty provision, which simply authorizes  court to increase the sentence for a recidivist." Almendarez-Torres v. United States, 523 U.S. 224, 226 (1998).  "It does not define a separate crime."  Id.  Accordingly, any attack on the Government's ability to prove Defendant has previously been convicted of an aggravated felony is more appropriately raised at sentencing.

///

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 29) is DENIED.

IT IS SO ORDERED.

Dated: May 23, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE